NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

TODD SIEGMEISTER,

*Plaintiff*,

v.

VASSAL BENFORD, LEON DAVIS t/a NEW NATION VENTURES and RONALD M. LEBOW, Esquire Attorney at law, State of California, and Jane Doe and John Doe 1 to 5,

*Defendants*.

Civil Action No. 15-07099

**OPINION**

**John Michael Vazquez, U.S.D.J.**

## I. INTRODUCTION

This matter comes before the Court on *pro se* Plaintiff Todd Siegmeister's ("Plaintiff") unopposed motion for default judgment against Defendants Vassal Benford; Leon Davis, trading as New Nation Ventures; and Ronald M. Lebow (collectively "Defendants") under Fed. R. Civ. P. 55(b). D.E. 12. The Court reviewed all submissions made in support of the motion, and considered the motion without oral argument pursuant to L. Civ. R. 78.1(b). For the reasons that follow, Plaintiff's motion is denied.

## II. FACTS[1] AND PROCEDURAL HISTORY

Around April 2014, Plaintiff alleges that he entered into a transaction where he was to purchase "a parcel of rough diamonds" from New Nation Ventures for $10,000,000. Compl. at 4, ¶ 3. Benford negotiated the terms of the transaction on behalf of New Nation Ventures and requested that Plaintiff "produce proof of financial capacity" to purchase the diamonds, which Plaintiff provided, and Defendants accepted.[2] *Id.*, ¶¶ 4-5. Additionally, Benford, Davis, and Lebow told Plaintiff that as a condition precedent to purchasing the diamonds, Plaintiff must deposit $50,000 into Lebow's attorney trust account, which would be applied toward the full purchase price. *Id.* at 5-6, ¶¶ 6, 11. On April 30, 2014, Plaintiff completed the transfer. *Id.* at 6, ¶ 12.

In addition, on April 30, 2014, Plaintiff entered into a memorandum of understanding (the "MOU") with Benford, Davis, and New Nation Ventures. *Id.* at 5, ¶ 9. Lebow, as attorney for Benford, Davis, and New Nation Ventures, prepared the MOU. *Id.* The MOU stated that "the transaction was to begin in Los Angeles, no later than Thursday May 1, 2014," and that if it was not concluded within five business days, the deposited $50,000 was to be returned to Plaintiff. *Id.* at 6, ¶ 13.

Plaintiff alleges that Defendants sent him emails leading him to believe that the diamonds were located in Benford's home and were to be sent to a "Brinks [s]ecurity facility located in Los Angeles, California," and maintained there by Benford. *Id.* at 6-7, ¶ 14. On May 1, 2014, Plaintiff and his gemologist went to the Brinks security facility to inspect the diamonds only to discover

---

[1] The facts of this matter derive from the Complaint, which the Court accepts as true for purposes of this motion for default judgment. *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No.11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011).

[2] It is not clear what form of "proof of financial capacity" was provided.

2

that no such diamonds existed at the location. *Id.* at 7, ¶ 15. Plaintiff alleges that to date, the transaction has not taken place and no funds have been returned to him. *Id.* at 6, ¶ 13.

Plaintiff filed a Complaint alleging causes of action for (1) breach of contract, (2) breach of implied contract, (3) fraudulent inducement, (4) fraud, and (5) unjust enrichment. Default was entered against each Defendant. Plaintiff subsequently filed this motion for default judgment. D.E. 12.

### III. LAW AND ANALYSIS

#### A. Standard of Review

"Once a party has defaulted, the consequence is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No.11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011) (quoting *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir.2005)). "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits, however, and [has] repeatedly state[d] [its] preference that cases be disposed of on the merits whenever practicable.'" *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir.1984)).

Prior to entering a default judgment, the court is required to: "(1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages." *Moroccanoil, Inc. v. JMG Freight Grp. LLC*, No. 14-5608, 2015 WL 6673839, at *1 (D.N.J. Oct. 30, 2015). Additionally, the Court must consider the following three factors: "(1) prejudice to the plaintiff if default is

denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *see also Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 522 (3d Cir. 2006).

### B. Jurisdiction and Service

"Before entering a default judgment as to a party 'that has not filed responsive pleadings, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'" *HICA Educ. Loan Corp. v. Surikov*, No. 14-1045, 2015 WL 273656, at *2 (D.N.J. Jan. 22, 2015) (quoting *Ramada Worldwide, Inc. v. Benton Harbor Hari Ohm, L.L.C.*, No. 08–3452, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008)).

#### i. Subject Matter Jurisdiction

To establish diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a), "the party asserting jurisdiction must show that there is complete diversity of citizenship among the parties" as well as an amount in controversy that exceeds the statutory threshold. *Schneller ex rel Schneller v. Crozer Chester Med. Ctr.*, 387 Fed. App'x 289, 292 (3d Cir. 2010). Here, Plaintiff states that he resides in Lake Hopatcong, New Jersey as well as East Lagon, Ghana. Compl. at 1. Plaintiff alleges that Lebow, Benford, Davis, and New Nation Ventures are all residents of California. *Id.* at 2. Plaintiff claims damages in an amount greater than the statutory threshold. *Id.* at 12; *Roy v. Ramsey Moving Sys.*, No. 15-3330, 2016 WL 1163932, at *2 (D.N.J. Mar. 23, 2016) (stating that "[i]n diversity cases, courts generally rely on the plaintiff's allegations of the amount in controversy contained in the complaint" and that "[t]he sum claimed by the plaintiff controls if the claim is apparently made in good faith" (internal quotation marks omitted)). Accordingly, the Court has diversity

jurisdiction because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds the statutory threshold.

### ii. Personal Jurisdiction

"[A] federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007). In New Jersey, "courts may exercise jurisdiction over a non-resident defendant to the uttermost limits permitted by the United States Constitution." *Nicastro v. McIntyre Mach. Am., Ltd.*, 201 N.J. 48, 72 (2010) (internal quotation marks omitted), *rev'd on other grounds sub nom., J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011). "Accordingly, in determining whether personal jurisdiction exists, we ask whether, under the Due Process Clause, the defendant has certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (internal quotation marks omitted).

Personal jurisdiction may be established by means of general jurisdiction or specific jurisdiction over a defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (noting that "opinions in the wake of the pathmarking *International Shoe* decision have differentiated between general or all-purpose jurisdiction, and specific or case-linked jurisdiction"). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014). "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Id.* (internal quotation marks omitted). Here, Plaintiff does not allege facts to support a finding of general jurisdiction in New Jersey over any Defendants. Lewbow, Benford,

and Davis are not New Jersey residents and New Nations Ventures is neither incorporated in New Jersey nor does it have its principal place of business there. Therefore, the question turns on whether New Jersey has specific jurisdiction over Defendants.

Specific jurisdiction requires that the defendant "has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal citations and quotation marks omitted). A court's exercise of personal jurisdiction "requires some act by which the defendant *purposefully avails* itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) (emphasis added) (internal quotation marks omitted). Additionally, due process requires that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see also O'Connor*, 496 F.3d at 316 (discussing three-step process in determining personal jurisdiction). Importantly, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

"In determining whether personal jurisdiction can be established in connection with a breach of contract claim, the court 'must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing.'" *Knierim v. Siemens Corp.*, No. 06-4935, 2008 WL 906244, at *7 (D.N.J. Mar. 31, 2008) (quoting *Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001)). "A contract may provide a basis for the exercise of personal jurisdiction that meets due process standards, but a

6

contract alone does not 'automatically establish sufficient minimum contacts in the other party's home forum[.]'" *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) (quoting *Burger King*, 471 U.S. at 478); *Mellon Bank (E.) PSFS, N.A. v. DiVeronica Bros.*, 983 F.2d 551, 557 (3d Cir. 1993) ("Contracting with a resident of the forum state does not alone justify the exercise of personal jurisdiction over a non-resident defendant[.]"). "[I]nformational communications in furtherance of [a contract between a resident and a nonresident] does not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over [the nonresident defendant]." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.*, 75 F.3d 147, 152 (3d Cir. 1996) (quoting *Sunbelt Corp. v. Noble, Denton & Assoc., Inc.*, 5 F.3d 28, 32 (3d Cir.1993)).

In *Vetrotex*, the Third Circuit found that there was no personal jurisdiction when, aside from two contracts between the parties, "[t]he only contacts that [the defendant] had with [the forum state] consisted of some telephone calls and letters written to [the plaintiff] in [the forum state]." *Id.* at 152. The Court distinguished the facts from other matters where the defendant had substantial contacts with the forum state, beyond the contract at issue. The Third Circuit explained that

> this is not a case where the defendant solicited the contract or initiated the business relationship leading up to the contract. Nor is this a case where the defendant sent any payments to the plaintiff in the forum state, or where the defendant engaged in extensive post-sale contacts with the plaintiff in the forum state.

*Id.* at 152-53 (internal citations omitted).

Here, the facts alleged do not support a finding of personal jurisdiction over Defendants for the breach of contract claim. Plaintiff alleges that Defendants described the diamonds for sale "in a series of correspondence, telephone calls, emails, and a contract of sale." Compl. at 4, ¶ 3.

On April 30, 2014, Plaintiff entered into an MOU[3] with Benford, Davis, and New Nation Ventures agreeing to complete the sale and exchange of diamonds. Next, Plaintiff claims that Defendants required him to wire $50,000 to Lebow's trust account. Plaintiff alleges that on May 1, 2014, he traveled to California to inspect the diamonds and complete the transaction, but that the diamonds were not present at the storage facility and the transaction never took place.

These facts are similar to *Vetrotex* where there was no personal jurisdiction when the plaintiff alleged that, aside from the contract at issue, the defendant's only contacts with the forum state consisted of "some telephone calls and letters written to [the plaintiff] in [the forum state]." *Vetrotex*, 75 F.3d at 152. Here, Defendants' only contacts with New Jersey were the MOU, correspondence, telephone calls, and emails. These contacts, without more, are insufficient to hale Defendants into court in New Jersey. *See Team First Consulting, LLC v. Hangliter*, No. 07-311, 2007 WL 1302440, at *6 (D.N.J. Apr. 27, 2007). ("Because nothing in the Complaint indicates that anything other than communications related to the alleged contract were sent to and from New Jersey, the court finds that it does not have personal jurisdiction over Plaintiffs' contract claims.").

Additionally, none of the distinguishing factors identified in *Vetrotex* are present here. Plaintiff does not allege that Defendants "solicited the contract or initiated the business relationship leading up to the contract." *Vetrotex*, 75 F.3d at 152. Defendants did not send money to Plaintiff in New Jersey or engage "in extensive post-sale contacts" with Plaintiff in New Jersey. *Id.* Notably, the only exchange of money was when Plaintiff sent $50,000 to Defendants in California. Additionally, it was Plaintiff who traveled to California where the diamonds were allegedly being stored and where the transaction was to take place. In short, Defendants have not "purposely

---

[3] Although it is not entirely clear from the Complaint, it appears that the MOU is the same document as the "contract of sale" between the parties.

8

availed" themselves of the privilege of doing business in New Jersey to establish the "minimum contacts" necessary for specific jurisdiction.

Plaintiff may amend the Complaint to add more specific facts as to why the Court may have personal jurisdiction over Defendants. For instance, Plaintiff may provide more details regarding the frequency and nature of the communications with Defendants regarding the formation of the MOU. *See Grand Entm't Grp. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir.1993) (holding that the court had personal jurisdiction over a breach-of-contract case in which the defendants had not physically entered the forum, but had sent at least twelve telexes into the forum and initiated twenty telephone calls with the plaintiffs in the forum regarding contract negotiations); *Lebel v. Everglades Marina, Inc.*, 115 N.J. 317, 324-25 (1989) (finding personal jurisdiction in New Jersey where "defendant allegedly telephoned the buyer in New Jersey to iron out the details of the contract, mailed the contract to the buyer in New Jersey for signing in New Jersey, and received payment from the plaintiff, who defendant knew was a New Jersey resident"). Additionally, if true, Plaintiff may describe whether any of the contract's performance was to take place in New Jersey. *See Burke v. Quartey*, 969 F. Supp. 921, 925–26 (D.N.J. 1997). Finally, if accurate, Plaintiff could provide more detail regarding whether he executed the MOU in New Jersey.[4] *See Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001) (finding it a factor supporting jurisdiction where the defendant's "solicitation eventually resulted in the fee agreement between [the plaintiff] and [the defendant], which [the plaintiff] signed in, and [the defendant] signed and returned to, [the forum state]").

---

[4] The Complaint merely states that Plaintiff and Defendants "entered into" the MOU without providing any details as to location.

For the same reasons discussed above, the Court does not have personal jurisdiction over the remaining four counts in the Complaint. The counts alleging breach of implied contract, fraudulent inducement, fraud, and unjust enrichment are premised on the same underlying factual allegations as the breach of contract claim. Accordingly, the Court also does not have personal jurisdiction over Defendants as to these counts. *See Blystra v. Fiber Tech Grp., Inc.*, No. 00-4593, 2005 WL 2807361, at *4 (D.N.J. Oct. 25, 2005) (stating that when "most of the claims arise out of the same set of facts and are tightly interwoven, an individualized discussion of each claim is unnecessary, as the jurisdictional analysis is the same").

### iii. Sufficiency of Proof of Service

In a motion for default judgment, the Court must determine whether the defendants were properly served. *Teamsters Pension Fund of Phila.*, 2011 WL 4729023, at *2 (citing *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir.1985)). Lebow, Benford, and Davis, all individuals, may be served by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>>
>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>>
>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). New Nation Ventures, a commercial entity, may be served in the same manner prescribed in Rule 4(e)(1) or "by delivering a copy of the summons and of the complaint to an

officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." *Id.* at 4(h)(1)(B).

Here, service was improper on all Defendants. The affidavits of service indicate that each Defendant was served by leaving a copy of the Summons and Complaint with Lebow's assistant at Lebow's place of business. Therefore, as to Benford, Davis, and New Nation Ventures, the only way this could be effective service would be if Lebow were an agent authorized to accept service on their behalf. However, service on one's attorney is proper only when the client expressly or impliedly authorizes the attorney to accept service on his or her behalf. *Mandale v. Des Moines Tria Tower, LLC*, No. 08-04888, 2009 WL 2412596, at *2-3 (E.D. Pa. Aug. 5, 2009). "The mere relationship between a defendant and his attorney does not, in itself, convey authority to accept service." *United States v. Ziegler Bolt & Parts Co.*, 111 F.3d 878, 881 (Fed. Cir. 1997). In this case, there are no facts in the Complaint or affidavits of service indicating that Benford, Davis, and/or New NationVentures authorized Lebow (or his assistant for that matter) to accept service on their behalf. Therefore, service was improper as to these Defendants.

As to Lebow, service was also improper. "Courts have held that service on receptionists or secretaries at defendants' places of business generally is insufficient under Rule 4(e) unless the defendants expressly appointed those employees to receive process." *McDonald v. SEIU Healthcare Pa.*, No. 1:13-2555, 2014 WL 4672493, at *7 (M.D. Pa. Sept. 18, 2014); *see also Allison v. Utah Cty. Corp.*, 335 F. Supp. 2d 1310, 1314 (D. Utah 2004) (finding that service of process on the defendant's receptionist was invalid when the defendant "had not authorized anyone to receive service on her behalf"); *Amnay v. Del Labs*, 117 F. Supp. 2d 283, 286 (E.D.N.Y. 2000) (concluding service was improper under Rule 4(e)(2) when summons and complaint was left with defendant's secretary); *Lamont v. Haig*, 539 F. Supp. 552, 557-58 (D.S.D. 1982) (finding service

invalid when service was made on defendants' secretaries and defendants filed affidavits stating that they had not appointed secretaries to receive service on their behalves). Here, Lebow's assistant was served with the Summons and Complaint at his place of business. There is no indication that Lebow authorized his assistant to accept service on his behalf.[5] Therefore, Lebow was not properly served.

### C. Sufficiency of Causes of Action

#### i. Breach of Contract

"To establish a breach of contract claim, a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result." *Murphy v. Implicito*, 392 N.J. Super. 245, 265 (App. Div. 2007). Here, Plaintiff adequately pleaded the elements of breach of contract. Plaintiff pleaded that he and Defendants entered into a written agreement where (1) Plaintiff was to pay Defendants $10,000,000 with $50,000 paid up front, (2) Defendants were to provide Plaintiff with "a parcel of rough and some cut diamonds," (3) Plaintiff paid the initial $50,000, (4) Defendants did not deliver the diamonds, and (5) Plaintiff sustained damages as a result. Therefore, Plaintiff plausibly states a claim in Count One.

#### ii. Breach of Implied Contract and Unjust Enrichment

Plaintiff alleges that Defendants breached an implied contract by breaching the provisions of the MOU when they failed to sell the rough diamond parcel to Plaintiff. These allegations do not state a claim for breach of an implied contract. As explained by the New Jersey Supreme Court, "[t]he true implied contract consists of an obligation arising from mutual agreement and

---

[5] Although the affidavits of service state that Lebow's assistant was "authorized to accept," this conclusory allegation is insufficient for the Court to conclude that service was proper.

intent to promise but where the agreement and promise have not been expressed in words." *St. Paul Fire & Marine Ins. Co. v. Indem. Ins. Co. of N. Am.*, 32 N.J. 17, 23 (1960) (internal quotation marks omitted); *see also Duffy v. Charles Schwab & Co.*, 123 F. Supp. 2d 802, 816-17 (D.N.J. 2000) ("The only difference between an implied-in-fact contract and an express contract is that the parties' agreement has been manifested by conduct instead of words."). Here, Plaintiff does not allege any facts indicating that he and Defendants entered into a mutual agreement that was not expressed in words. Instead, the crux of Plaintiff's breach of implied contract claim appears to be premised on a breach of the MOU's express terms. Therefore, Count Two does not plausibly state a cause of action.

### iii. Fraudulent Inducement and Fraud

A claim for fraudulent inducement must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *Kare Distribution, Inc. v. Jam Labels & Cards LLC*, No. 09-00969, 2009 WL 3297555, at *4 (D.N.J. Oct. 9, 2009). A Plaintiff states a claim for fraudulent inducement by pleading the following five elements: "(1) a material representation of a presently existing or past fact; (2) made with knowledge of its falsity; and (3) with the intention that the other party rely thereon; (4) resulting in reliance by that party; (5) to his detriment." *RNC Sys., Inc. v. Modern Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 451 (D.N.J. 2012). Here, Plaintiff adequately pleads all five elements. Plaintiff alleges that on April 30, 2014, Defendants induced him to wire transfer $50,000 to Lebow's bank account by knowingly misrepresenting to Plaintiff that the transfer would be applied toward the full payment for the diamonds he was to buy from Defendants. Plaintiff relied on this representation to his detriment by making the transfer and not receiving any benefit in exchange. These facts plausibly state a claim for fraudulent inducement.

The elements of common law fraud are nearly the same as fraudulent inducement. *See Allstate New Jersey Ins. Co. v. Lajara*, 222 N.J. 129, 147 (2015) ("The elements of common-law fraud are (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."). Therefore, for the same reasons discussed above, Plaintiff also adequately states a claim for common law fraud.

### iv. Unjust Enrichment

"Under New Jersey law, a claim under the quasi-contractual theory of unjust enrichment has two essential elements: '(1) that the defendant has received a benefit from the plaintiff, and (2) that the retention of the benefit by the defendant is inequitable.'" *Canadian Nat. Ry. v. Vertis, Inc.*, 811 F. Supp. 2d 1028, 1034 (D.N.J. 2011) (quoting *Wanaque Borough Sewerage Auth. v. West Milford*, 144 N.J. 564, 575 (1996)). "Quasi-contract liability will not be imposed when a valid, unrescinded contract governs the rights of the parties." *Duffy*, 123 F. Supp. 2d at 814. Here, Plaintiff alleges that "Defendants have been unjustly enriched by their failure to abide by the terms and provisions of the [MOU]." Defendants' alleged breach of the MOU may not serve as the basis for Plaintiff's unjust enrichment claim because he asserts breach of contract.[6] Therefore, Count Five does not plausibly state a claim.

---

[6] The Court notes that Plaintiff may plead alternative theories of liability, but he may not premise his unjust enrichment claim on the breach of an express contract. *See Pauly v. Houlihan's Restaurants, Inc.*, No. 12-0025, 2012 WL 6652754, at *3 (D.N.J. Dec. 20, 2012) ("[A] plaintiff can plead alternative theories of recovery, one based upon a valid contract, another based upon quasi-contract that does not depend on there being an express contract." (internal quotation marks omitted)). Thus, if Plaintiff's breach of contract claim were defective, he may be able to proceed under an unjust enrichment theory.

### D. Damages

Plaintiff seeks damages for the $50,000 he deposited into Lebow's account, lost profits in the amount of $10,000,000, costs of suit, and attorneys' fees (although he is proceeding *pro se*). "On a motion for default judgment, a court does not accept as conceded allegations pertaining to the amount of damages." *Carolee, LLC v. eFashion Sols., LLC*, No. 12-02630, 2013 WL 5574594, at *4 (D.N.J. Oct. 9, 2013). "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Belmonte v. Spitzer*, No. 09-4715, 2010 WL 2195651, at *1 (D.N.J. May 27, 2010) (quoting *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)); *see also Malik v. Hannah*, 661 F.Supp.2d 485, 490 (D.N.J. 2009) (plaintiff seeking default judgment "must still offer some proof of damages" before court can decide whether or not to enter default judgment).

Here, Plaintiff offers no proof of damages other than the allegations in the Complaint. Plaintiff has not presented the Court with proof of the $50,000 wire transfer. There is no evidence presented to support Plaintiff's conclusion that he would have made $10,000,000 in profit from the diamond transaction. Additionally, Plaintiff has not provided the Court with the MOU or any of the underlying communications that took place with Defendants regarding the diamond transaction. Therefore, Plaintiff has not set forth any evidence to support his claim for damages.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's motion for default judgment is denied without prejudice. Within forty-five days of this Opinion, Plaintiff may file, if he chooses, an amended complaint addressing the deficiencies identified herein. An appropriate Order accompanies this Opinion.

Dated: June 1, 2017

John Michael Vazquez, U.S.D.J.